Robertson, Ch. J.
I have not been able to find any. evidence in this case that the gun, whose discharge caused the injury to the plaintiff, was fired in the course of any. employment or duty of the master of the-vessel in question. It was not necessary in the course of its navigation, or as a matter of duty to other vessels, or in compliance with any custom governing vessels in general in Hew York harbor, or yachts belonging to the Hew York Yacht Club squadron, (if the vessel in question belonged to that squadron, or was bound by the rules of that club, of which there does not seem to have been sufficient evidence.) So that the ground of the defendant’s liability is reduced to the question, *538 whether, by merely permitting the master of the vessel to ■ have the possession and custody of the gun and ammunition, with other equipments of the vessel, the defendant became responsible for their careless use.
In the case of Lamb v. Lady Palk, (9 Car. & P. 629,) the defendant was held not liable for the negligence of her ■coachman, who, after descending from his box, had, in turning aside the head of a horse harnessed to a van, which obstructed his passage, precipitated a box of mineral waters from such van upon the shafts of the plaintiff’s gig, and broke them, because the act was not done in the course of the coachman’s employment for the defendant. In the case of Mitchell v. Crassweller, (13 C. B. 237, 16 Eng. L. and Eq. 448,) it was held that for an injury done by the negligence of the defendant’s carman to a third person, in driving his employer’s horse and cart, for his own private purpose, after the time when he should have, and usually did, put up such horse and cart in their stable, the employer is not responsible. In the cases of Joel v. Morison, (6 Car. & P. 501,) and Sleath v. Wilson, (9 id. 607,) it was conceded that if a servant drives for his own purposes his master’s carriage without leave, during the time it is not in use for the business of the latter, the master is not liable for any injury caused by its means while so driven. Although, in both, it- was held that if while driving for his master’s-business, the" servant merely make a detour for his own purposes, his master is responsible for his negligent driving during such deviation. That distinction is made in both such cases to rest on the fact that, in the latter event, the master has enabled the servant to do the injury, by the mismanagement of the carriage while intrusted with its use for the master’s benefit. That doctrine would have applied in this case, if the sailing master had injured a person or vessel by careless navigation of the vessel under his charge.
The mere possession and control of the gun and ammunition could not create or imply permission, much less au *539 thority or duty to use them in the face of the positive orders of the defendant to the contrary. It could not he any part of the duty of sailing or taking care of the vessel to discharge signal guns or give salutes, and there was no evidence of a uniform custom on the part of the vessel in question, or any other yachts, or of any regulation to that effect in the squadron to which it was supposed to belong, to make it part of the ordinary employment of the sailing-master. I apprehend there: is no difficulty in a general limitation of the extent of the employment of a servant by agreement or command, so as to prevent him from doing acts of' a particular character. It is true that the prohibition of specific acts within the scope of a general employment, on a particular occasion only, or of a particular mode of doing them, may not exempt the employer from liability; but prohibiting their being ever done, must certainly curtail the extent of the employment; and the language of Justice Story, (Agency, 452,) in declaring the liability of a principal, notwithstanding his prohibition of the acts of his agent, by which third parties are injured, must be construed in that sense. The case of the Philadelphia and Reading Railroad Co. v. Derby, (14 How. 295,) also can only extend that far, otherwise it is contrary to several of the very cases cited in the opinion then delivered.
I am not aware of any principle which justifies the use by a party of a prior written statement of a witness of such party to instruct him what to say, under pretext of refreshing his memory, when he has not shown any weakness of recollection. The case of Guy v. Mead, (22 N. Y. Rep. 462,) cited for the purpose, does not sustain any such proposition, and the attempt to do it on the trial was properly prevented. I do not understand the question put to a witness as to the extent of the orders given by the defendant as calling for his construction of their language, but his recollection of it. He had not previously undertaken to give their precise words. It was, therefore, properly admitted. . There being *540 no error committed on the trial, the exceptions should be overruled, and judgment given for the defendant dismissing the complaint on the merits, with costs.
Mokell, J. concurred.